NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.L. and B.L.

No. 1 CA-JV 26-0028
FILED 07-30-2026

---

Appeal from the Superior Court in Mohave County
No. S8015JD202400033
The Honorable Rick A. Williams, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Veronica F. Rios
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Vice Chief Judge David D. Weinzweig joined.

---

**F O S T E R**, Judge:

¶1          Marlo L. ("Mother") appeals the juvenile court's termination of her parental rights as to A.L. and B.L. She argues the Department of Child Safety (the "Department") failed to make diligent efforts to reunify her with her children and that the court erred in finding termination in their best interests. This Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2          Mother gave birth to A.L. in December 2023. Mother admitted to using oxycodone during her pregnancy. After birth, A.L. suffered withdrawals and the Department intervened. The Department allowed A.L. to remain in Mother's care and began offering services to ensure A.L.'s safety. A few months later, Mother and A.L. tested positive for fentanyl. Mother entered treatment and the Department placed A.L. in a family member's care.[1]

¶3          A few months later, the Department removed A.L. from family care for safety reasons. It could not locate Mother, who was known to be abusing drugs, and filed a dependency against her. The dependency petition alleged that Mother neglected A.L., could not provide proper care because of substance abuse and was unable to provide for A.L.'s basic needs.

¶4          Mother pled no contest to the dependency and the juvenile court found A.L. dependent as to Mother. The court adopted a concurrent case plan of "family reunification" and "severance and adoption" for A.L.

¶5          In November 2024, Mother gave birth to B.L. B.L. required special medical care because of fentanyl and cocaine exposure before birth.

---

[1] The court terminated Father's parental rights as to B.L., but he has not appealed and is not a party to this appeal. Accordingly, this Court only discusses Father to provide context.

The Department amended A.L.'s dependency petition to include B.L. It alleged Mother neglected B.L. and asked for the juvenile court to grant it custody of B.L. The amended petition reasoned Mother could not care for B.L. due to substance abuse, an unfit home, Mother's failure to provide for B.L.'s basic needs and her inability to provide for B.L.'s future medical needs. The court held a dependency hearing on the petition and Mother failed to appear. In Mother's absence, the court found B.L. dependent as to Mother.

**¶6** After the court found both children dependent, the Department offered Mother reunification services, including substance abuse treatment and testing, parenting programs and supervised visitation. Around two years after the dependency finding, Mother remained minimally engaged with the Department and the services it offered. But she failed to submit to drug testing required to reunify the family. Mother also missed many supervised visitations.

**¶7** When Mother did attend supervised visits, the Department noted concerns about substance abuse. During visits, Mother would go to the bathroom multiple times for extended periods. At one visit, after using the bathroom, Mother fell asleep and drooled while sleeping. The case aide noted during this visit that Mother appeared groggy due to heavy eyelids and bags under her eyes. Mother then visited the bathroom for about 20 minutes. Upon returning, the caseworker noted a strong unpleasant smell from Mother. The caseworker then investigated and found an overwhelming burnt and toxic smell in the bathroom as well as evidence that Mother lied about her need for using the bathroom. During a subsequent visit, Mother looked sickly with a grayish pale skin tone and droopy under eyes. She again used the bathroom for an extended period and again a toxic smell emanated from the room after her use. This repeated behavior resulted in the case aide terminating Mother's visit with A.L.

**¶8** In October 2025, the Department moved to terminate Mother's parental rights to both children. It alleged chronic substance abuse, six months' time in an out-of-home placement and fifteen months' in an out-of-home placement. *See* A.R.S. §§ 8-533(B)(3), (8)(b)–(c). Around this time, Mother was arrested and jailed. After her release from jail in December, Mother requested the Department again provide services such as drug testing and supervised visitations. But its attempts to connect with her failed. The Department was unable to contact Mother after she contacted them and provided an address.

**¶9**      The juvenile court held a termination adjudication hearing in February 2026 and terminated Mother's rights as to both children. It found that Mother "has made little to no effort to demonstrate sobriety" and "failed to demonstrate any enhanced parenting capacities," which could put the children "at a significant risk of harm if returned to her care." The court found termination was in the children's best interests because it would provide the children with permanency through adoption. It also determined that allowing Mother to retain her parental rights would create a "significant risk of harm" to the children.

**¶10**      Mother timely appealed. This Court has jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-120.21(A).

## DISCUSSION

**¶11**      A juvenile court may terminate a parent's rights if it finds by clear and convincing evidence that at least one of the statutory grounds for termination is present. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149, ¶ 8 (2018). It must also find by a preponderance of the evidence that termination is in the child's best interests. A.R.S. § 8-533(B); *Id.* at 150, ¶ 8; *see also Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 190, ¶ 27 (App. 1999). This Court will "not reweigh the evidence but will look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Servs.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citation omitted); *see also Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 10 (2021). "[I]f reasonable evidence and inferences" support the court's findings, this Court "will affirm a severance order unless it is clearly erroneous." *Jessie D.*, 251 Ariz. at 579, ¶ 10 (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016)). However, legal issues requiring interpretation and application of statutes are reviewed *de novo*. *Id.* (citation omitted).

## I.      The Department made appropriate reunification efforts.

**¶12**      Mother argues that the Department failed to provide her with services to reunify the family after she left jail. She contends that the Department failed to tailor services to her specific needs as an addict and failed to recognize her recent success. Mother claims the juvenile court erred when it did not allow her additional time to demonstrate that she had resolved her substance abuse and its impact on her past parenting. The Department contends that Mother did not raise this claim with the juvenile court and therefore waived it.

**¶13**      A parent is precluded from challenging the Department's reunification efforts for the first time on appeal. *Shawanee S. v. Ariz. Dep't of*

4

*Econ. Sec.*, 234 Ariz. 174, 178–79, ¶ 16 (App. 2014). Here, over the course of two years, the juvenile court conducted many hearings and Mother never claimed that the Department failed to provide services or assist in reunification. She also "never objected to the court's periodic reasonable-efforts findings." Had Mother believed the Department was not making diligent efforts to provide adequate services, "it was incumbent on her to promptly bring those concerns to the attention [of] the juvenile court." *Id.* at 179, ¶ 18. Thus, Mother has waived these arguments. However, because this case involves the interests of children, this Court prefers to resolve the issues on the merits and in this Court's discretion, it will consider Mother's argument. *See Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013).

**¶14**         The Department must make all reasonable efforts to preserve the family relationship. *Mary Ellen C.*, 193 Ariz. at 186, ¶ 1. However, the Department need not pursue measures that are futile; it only needs to undertake measures with a reasonable prospect of success. *Id.* at 192, ¶ 34. Likewise, the Department is not required to "provide 'every conceivable service,' it must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Id.* at ¶ 37 (quotation omitted). And in reviewing the Department's efforts, a court considers the Department's diligent efforts under the totality of the circumstances. *See Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 49 (App. 2019).

**¶15**         The totality of the record supports the juvenile court's findings that the Department provided reasonable and diligent reunification efforts. Mother's involvement with the Department related to A.L. and B.L. began in December 2023 and the record shows that as of April 2024, it had offered her extensive services. The services consisted of substance abuse assessment and treatment, drug testing, counseling and parenting programs. The Department also provided Mother with transportation services as needed. The Department moved to terminate Mother's parental rights in October 2025—the same month she went to jail—almost two years after its first involvement with her for this case. Mother left jail in December 2025, two months after the termination petition had been filed.

**¶16**         Mother testified that after her time in jail she attempted to continue services including drug testing and visitation. At the termination hearing, Mother also testified that she had been participating in drug testing since being released from jail and had not tested positive for four months. But that does not negate the years that she failed to participate. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010)

("[T]emporary abstinence from drugs and alcohol does not outweigh [Mother's] significant history of abuse [and her] consistent inability to abstain [from drugs] during this case.").

**¶17**            The juvenile court found that before Mother's incarceration, the Department offered Mother multiple services, which Mother acknowledged in her opening brief. *See Mary Ellen C.*, 193 Ariz. at 192, ¶ 37 (the Department is not required to "provide 'every conceivable service,' it must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child") (quotation omitted); *Maricopa Cnty. Juv. Act. No. JS-501904*, 180 Ariz. 348, 352–53 (App. 1994) (the Department satisfied its diligent efforts by offering appropriate services and that a parent's failure or refusal to participate in those services does not preclude termination). Mother minimally participated. The court recognized that after Mother's time in jail, the Department did not respond as it previously had, but the court found that "overall, during the entire pendency of this case, [the Department] has been diligent in providing appropriate reunification services." The court also found that the Department provided reasonable services, and, despite Mother's testimony, it could not "disregard[ ] the years of help that's been offered and the services that have been available." The court properly considered the Department's services as a whole, rather than just the time after Mother's release from jail. *See Donald W.*, 247 Ariz. at 23, ¶ 49. The record supports the juvenile court's findings.

## II.    Sufficient evidence supports the court's finding that termination of Mother's rights was in the best interests of A.L. and B.L.

**¶18**            Mother also challenges the juvenile court's best interests findings. She acknowledges that she did not make a best interests argument at the termination adjudication hearing but insists her arguments should not be waived. Though this Court could treat Mother's omission as waiver, the decision to apply waiver is discretionary. *See Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 536, ¶ 9 (App. 2018). For the reasons stated in ¶ 13, this Court declines to apply waiver here. *See id.*

**¶19**            The juvenile court determines a child's best interests by a preponderance of the evidence. *Alma S.*, 245 Ariz. at 149–50, ¶ 8. "[A] determination of the child's best interests must include a finding as to how the child would benefit from severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Act. No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts must consider the totality of the circumstances at the time of severance, "including the child's adoptability and the parent's

rehabilitation." *Alma S.*, 245 Ariz. at 148, ¶ 1. And a court may also find that a child's best interests will be served by the permanency and stability an adoption would provide. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 337, ¶ 16 (App. 2004).

### A.  A.L.'s best interests

**¶20**  Mother argues that the court improperly found termination in A.L.'s best interests because it is pursuing a reunification plan with Father rather than adoption. She asserts the only benefit to termination of her rights is to allow Father to obtain sole decision-making authority if he is able to reunify with A.L.

**¶21**  Here, the record does not support Mother's arguments. The juvenile court found termination in A.L.'s best interests given that she was in an adoptive placement and that Mother had not provided consistent efforts of her sobriety. Contrary to Mother's argument, the court did not mention Father's reunification efforts in its best interests finding for Mother. The court heard testimony that the Department removed A.L. from Mother's care in 2024 and that for two years, A.L. was in a kinship placement. A caseworker testified about Mother's history of substance abuse and "her inability to keep [A.L.] safe in the future." The court expressed that Mother had "not demonstrated stability, safety, consistency [and] sobriety," despite her recent efforts. The court found that returning A.L. to Mother's care "would put [her] at risk of future abuse or neglect" because of Mother's longstanding substance abuse. *See Oscar O.*, 209 Ariz. at 337, ¶ 16; *see also Maricopa Cnty. Juv. Act. No. JS-501904*, 180 Ariz. at 352 (a specific adoption plan is not required to terminate parental rights). The record supports the court's findings as to A.L.'s best interests.

### B.  B.L.'s best interests

**¶22**  Mother makes no argument about B.L.'s best interests. She only argues that insufficient evidence supports the juvenile court's finding that the termination of her parental rights was in A.L.'s best interests. But this Court addresses B.L.'s best interests for a clear record. *See Nold*, 232 Ariz. at 273, ¶ 10.

**¶23**  The court found that B.L.'s medical needs and Mother's inability to demonstrate "stability, safety, consistency, [and] sobriety," supported termination was in B.L.'s best interests. The record shows a caseworker testified that termination would be in B.L.'s best interests because B.L.'s special needs were being met by her caregiver. B.L.'s attorney agreed with the Department and reiterated that B.L. would require

someone who was willing and able to care for her on a consistent basis. The court acknowledged that Mother admitted to being "unable to meet [B.L.'s] needs and would be unable to reunify safely with her." Evidence supports the court's finding that a continued relationship with Mother was not in B.L.'s best interests. *See Maricopa Cnty. Juv. Act. No. JS-500274*, 167 Ariz. at 5. Mother has shown no error.

## CONCLUSION

¶24        This Court affirms.

